*NOT FOR PUBLICATION*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JENKINSON'S PAVILION; ANTHONY STORINO and FRANK STORINO,<br><br>       Plaintiffs,<br><br>v.<br><br>BOROUGH OF POINT PLEASANT BEACH; MAYOR AND COUNCIL OF BOROUGH OF POINT PLEASANT BEACH; POLICE DEPARTMENT OF BOROUGH OF POINT PLEASANT BEACH; PAUL M. KANITRA, Individually and his capacity as Mayor of the Defendant, Borough of Point Pleasant Beach; CARYN BYRNES, Individually and in her official capacity as Councilwoman; ARLENE TESTA, Individually and in her official capacity as Councilwoman; DOUGLAS VITALE, Individually and in his official capacity as Councilman; and KEVIN B. RIORDAN, Individually and in his official capacity as Borough Attorney for the Defendant, Borough of Point Pleasant Beach,<br><br>       Defendants. | Civil Action No. 20-11906 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Plaintiffs, Jenkinson's Pavilion ("Jenkinson's Pavilion"), Anthony Storino ("Anthony"), and Frank Storino ("Frank") (collectively, "Plaintiffs"), brought this action against Defendants, Borough of Point Pleasant Beach (the "Borough"), Mayor and Council of the Borough of Point Pleasant Beach (the "Governing Body"),[1] Police Department of the Borough of Point Pleasant Beach (the "Police Department"), Paul M. Kanitra ("Mayor Kanitra"), Caryn Byrnes ("Councilmember Byrnes"), Arlene Testa ("Councilmember Testa"), Douglas Vitale

---

[1] As the name suggests, the Borough is organized under the borough form of government, N.J.S.A. 40A:60–1 to 8.1, with a governing body composed of a Mayor and six Council members.

("Councilmember Vitale"), and Kevin B. Riordan, Esq. ("Borough Attorney Riordan") (collectively, "Defendants") in connection with Ordinance 2020-12 (the "Ordinance"), enacted by the Borough on August 4, 2020.  Specifically, in addition to various state law claims, Plaintiffs allege that by enacting the Ordinance, Defendants violated Plaintiffs' Fourth and Fourteenth Amendment rights, 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 and -2 ("NJCRA").  Defendants removed the case pursuant to 28 U.S.C. § 1331 on the basis of federal question jurisdiction.

Presently before the Court are three separate motions.  First, Defendants move to dismiss the Complaint on various grounds, including legislative immunity and failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Also before the Court is a motion to remand and a motion for preliminary injunction filed by Plaintiffs.  For reasons set forth below, Plaintiffs' motion for remand is **DENIED** and Defendants' motion to dismiss is **GRANTED**.  The Court dismisses Plaintiffs' federal claims arising under Section 1983 (Count I) and its analog state law claim under the NJCRA (Count II), because, as alleged, Plaintiffs lack Article III standing to pursue those claims. The Court also dismisses Plaintiffs' additional claims (Counts III through VI), for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  As a result, Plaintiffs' motion for preliminary injunction is **DENIED**, based on an inability to demonstrate a likelihood of success on the merits.

Plaintiffs are given leave to file an amended complaint against the Borough and the Governing Body within fourteen (14) days from the date of this Opinion and accompanying Order, in accordance with the dictates of this Opinion, and they may file a renewed motion for preliminary injunction within that same 14-day period, based on their amended complaint.  The Borough and the Governing Body will then be provided twenty-one (21) days from the date Plaintiffs file their renewed motion for preliminary injunction to submit opposition.  Plaintiffs will be provided seven

(7) days from the date of the opposition to file a reply.  The time in which Defendants may file an Answer or otherwise move with regard to the amended complaint is stayed until further Order of the Court.

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following factual allegations are taken from Plaintiffs' Verified Complaint and are accepted as true for the purpose of this motion to dismiss.  (ECF No. 1, Ex. A ("Compl.").)

Jenkinson's Pavilion is a business entity owned by Anthony and Frank Storino.  (Compl., ¶ 1.)  Jenkinson's Pavilion owns Jenkinson's Aquarium, Jenkinson's Pavilion Bar and Restaurant complex, and a portion of the beach and beachfront in the Borough.  (Compl., ¶ 1.)

Plaintiffs allege that on August 4, 2020, the Borough enacted Ordinance 2020-12, which regulates beaches located within the Borough.  (*Id.* at ¶ 12.)  According to Plaintiffs, the Mayor cast the deciding vote in favor of the Ordinance to break the Borough Council's deadlock following a tie vote.  (*Id.*)  Specifically, the Ordinance, in relevant part, reads:

> §21-1.4        Prohibited Acts.
>
> No person shall do any of the following things at or upon the Boardwalk and/or beaches or the ocean waters located in the Borough.
>
> […]
>
> 3. Make any loud noise, sound or music to the annoyance of any other person, or use loud, profane or indecent language.
>
> […]
>
> 5. Take any intoxicating liquor upon the beach, or any glass containers or bottles.

(Ordinance 20-2012, Compl. at Ex. B.)  In addition, the Ordinance prohibits any person from bringing "coolers larger than 13 inches in width, or length, or height and/or has a capacity greater

than nine (9) quarts" onto a beach in the Borough and purportedly confers policing authority on the Borough's Police Department to enforce the Ordinance.  (*Id.*; *see also* Compl., at ¶ 16.)

The Complaint alleges that the Ordinance "drastically changes the long existing 'status quo' and with little or no advance notice suddenly expanded the scope" of the Borough's prior laws.  (Compl., at ¶ 15.)  Specifically, Plaintiffs submit that while the Borough's prior laws only regulated the <u>municipal</u> beach (the "Old Ordinance"), the Ordinance purportedly regulates "all beaches," including Plaintiffs' private beach.  (*Id.* at ¶¶ 14-15.)  More specifically, the Old Ordinance, in relevant part, read:

> §21-1A.8        Prohibited Acts.
>
> No person shall do any of the following things at or upon the **municipal beach**:
>
> […]
> c. Make any loud noise, sound or music to the annoyance of any other person, or use loud, profane or indecent language.
>
> […]
>
> e. Take any intoxicating liquor upon the beach, or any glass containers or bottles.
>
> […]
>
> l. Bring any of the following onto the Beach:
>
>      1. Coolers larger than 24 inches in width, or length, or height and/or has a capacity greater than thirty-six (36) quarts.
>
>      2. Serving trays, warming trays, pots, pans, devices, equipment or utensils utilized for the preparation or storage of food.
>
>      3. Canopy style sun shades bigger than 10' x 10' and any size canopy style sun shade with side walks including tents and tent clusters.

      4. Devices designed or used to shade infants and small children, also known as "baby tents," larger than 36 inches high by 36 inches wide by 36 inches deep.

      5. Umbrellas with a collapsible circular shade greater than eight feet diameter or radiating from a center pole greater than 7 feet 6 inches in height, or with grounding lines, ropes, or sides.

      6. Umbrellas, baby tents and canopies anchoring lines, tethers, or the like that extended beyond the perimeter of the umbrella, the baby tent or canopy.

      7. Tables or stands or boards or other devices positioned to function as a table.

      m. Cook on the Beach.

(Ordinance 20-2012, Compl. at Ex. A) (emphasis added.)

Plaintiffs take issue with the fact that the Ordinance changed the definition of "beach" to include "ALL beaches," including private beaches like the one owned by Plaintiffs. (Compl., at ¶¶ 15-16.) According to Plaintiffs, through this "illegal exercise of power," the Borough has declared it illegal for adults over twenty-one years old to bring, possess, and consume alcohol on Plaintiffs' private beach. (*Id.* at ¶ 16.) Moreover, Plaintiffs contend that the Ordinance makes it "all but illegal to make any noise or play any music" on Plaintiffs' private beach. (*Id.*)

Accordingly, on August 28, 2020, Plaintiffs filed the Verified Complaint in the Superior Court of New Jersey, Ocean County, asserting six causes of action: violation of Section 1983 (Count I); violation of the NJCRA (Count II); ultra vires (Count III); violation of the statutory doctrine of "Pre-Emption by Exclusion," pursuant to N.J.S.A. 2C:1-5(d) (Count IV); common law judicial pre-emption (Count V); and lastly, Plaintiffs assert a c claim that the Ordinance is arbitrary, capricious, and unreasonable (Count VI). In addition, Plaintiffs sought to preliminarily enjoin and

restrain Defendants from enforcing the Ordinance, and to disqualify Riordan from representing Defendants in this action due to a purported conflict of interest and the appearance of impropriety.[2]

That same day, Defendants filed a Notice of Removal with this Court, and three days later, on August 31, 2020, they filed the instant motion to dismiss.  (ECF Nos. 1 and 2.)

In response, Plaintiffs moved to remand the case to state court on September 9, 2020, and on March 12, 2021, Plaintiffs renewed the motion for preliminary injunction that was previously filed before the Superior Court of New Jersey.[3]

## II.   LEGAL STANDARDS

### A.   Motion for Remand

Removal of a suit from state to federal court is proper only if the federal court to which the action is removed would have had original jurisdiction over the matter.  *Entrekin v. Fisher*

---

[2]   Plaintiffs did not file a separate motion to disqualify Borough Attorney Riordan.  Rather, Plaintiffs' arguments regarding disqualification were improperly subsumed within Plaintiffs' motion for preliminary injunction, and therefore, Plaintiffs' disqualification request is procedurally defective.  Notwithstanding this procedural defect, Plaintiffs' motion for preliminary injunction is denied based on the reasons stated in this Opinion.  As such, any future request to disqualify Borough Attorney Riordan, or any other attorney, must be made separately before the Magistrate Judge.

[3]   I note that Plaintiffs complained of, in their motion for preliminary injunction, the Court's "delay" in rendering a decision.  According to Plaintiffs, the instant motion for preliminary injunction was filed in the New Jersey Superior Court in August 2020, and when the case was removed to this Court, Plaintiffs' application for emergent relief was also transferred.  Indeed, Plaintiffs' counsel represents that an unidentified individual from my chambers advised that the motion for preliminary injunction and Order to Show Cause was pending "before the Court," and that despite that assurance, "no action has been taken in 6 months on this emergent request." Regardless of these comments, the rules however, including Fed. R. Civ. P. 65 and Local Rule 65.1, do not allow for a litigant to rely on a state court filing.  Rather, had Plaintiffs wished to pursue their application for emergent relief in this Court upon removal, they should have properly renewed the motion in this forum.  Plaintiffs failed to do so, and therefore, the motion for preliminary injunction was not properly before this Court until March 12, 2021, when Plaintiffs refiled the motion for preliminary injunction.

*Scientific, Inc.*, 146 F. Supp. 2d 594, 603–04 (D.N.J. 2001) (citing 28 U.S.C. § 1441(a)–(b)). Indeed, the statute provides in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).  Remand is governed by 28 U.S.C. § 1447(c), which provides that a

> motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days of the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c).  Importantly, "[w]hen the propriety of the removal is challenged, the burden is on the defendant to show that removal is proper, and the Court is obligated to 'strictly construe the removal statutes against removal, and resolve any doubts in favor of remand.'" *Hackensack Univ. Med. Ctr. v. Lagno*, No. 06-687, 2006 WL 3246582, at *2 (D.N.J. Nov. 3, 2006) (quotation omitted).

### B.     Fed. R. Civ. P. 12(b)(6)

Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original).  Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted).  In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556

U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[M]ere restatements of the elements of [a] claim[ ] ... are not entitled to the assumption of truth."  *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted).  Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).  "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

"Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim ... and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014).  "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (internal quotation marks omitted).  Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss.  *See Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

## III.   DISCUSSION

### A.   Motion for Remand

Plaintiffs do not dispute that this case was properly removed to this Court based on federal question jurisdiction.  Rather, Plaintiffs contend that removal was procedurally improper because in filing the Notice of Removal, Borough Attorney Riordan failed to indicate whether all

Defendants consented to removal pursuant to 28 U.S.C. § 1446(b)(2)(A).  (Pl. Remand Motion Moving Br., at 5-9.)  Put simply, Plaintiffs argue that Riordan unilaterally removed this action to this Court without obtaining the consent of the other defendants.  (*Id.* at 8-9.)  I disagree.

Here, Riordan's Notice of Removal clearly states that Riordan, as counsel for the Borough, the Governing Body, the Police Department, and the individual councilmembers named in this lawsuit, filed the request on behalf of "Defendants."  (*See* ECF No. 1.)  Indeed, in the six months since Riordan filed the Notice of Removal on behalf of Defendants, the Court has not received any opposition to removal by any defendants, except for the instant motion for remand filed by Plaintiffs.  Accordingly, Plaintiffs' motion for remand, including their request for attorneys' fees, is denied.

### B.    Motion to Dismiss

#### 1.  *The Police Department*

At the outset, Plaintiffs' claims against the Police Department are dismissed.  First, with respect to Plaintiffs' claims under Section 1983, "[i]n New Jersey, a municipal police department is not an entity separate from the municipality." *Trapp v. New Jersey*, No. 17-10709, 2018 WL 4489680, at *6 (D.N.J. Sep. 19, 2018) (citing N.J.S.A. 40A:14-118 (stating that that New Jersey police departments are "an executive and enforcement function of municipal government")).  "In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (quotation and citation omitted); *see also Trapp*, 2018 WL 4489680, at *6 (finding that the defendant police department cannot be sued under § 1983 and dismissing all claims against them); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 429 (D.N.J. 2011) (same) *Catlett v. N.J. State*

*Police*, No. 12-153, 2013 WL 2181273, at *4 (D.N.J. May 20, 2013) (same).  Thus, Count I and Count II are dismissed with prejudice as to the Police Department.[4]  As noted, the Police Department is merely an arm of its municipality, and therefore, the proper defendant for a Section 1983 claim is the Borough.

In addition, all other claims purportedly asserted against the Police Department are dismissed without prejudice because the Complaint contains no allegations of wrongdoing on the part of the Borough police.  Indeed, the only allegation in the Complaint related to the Police Department is that the Ordinance "confer[s] 'policing' authority on local municipal police to 'police' the private property beach…"  (Compl., at ¶ 16.)  The Complaint does not contain any allegations that the Police Department has taken any enforcement actions with respect to the Ordinance, nor do Plaintiffs suggest that the Police Department somehow had a role in drafting or enacting the Ordinance.  Moreover, the Complaint contains no allegations that members of the Police Department conducted a search on Plaintiffs' property pursuant to the Ordinance, confiscated or seized any personal items, like alcohol or coolers, pursuant to the Ordinance, or otherwise entered Plaintiffs' property to investigate potential wrongdoing in violation of the Ordinance.  Without additional, more specific factual allegations implicating the Police

---

[4]      In Count II, Plaintiffs assert a violation of the NJCRA.  The NJCRA was modeled after Section 1983, and, therefore, courts in New Jersey have consistently analyzed claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011); *Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart."); *Armstrong v. Sherman*, No. 09-716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983.").  Accordingly, the Court's findings with respect to Plaintiffs' Section 1983 claims will apply equally to Plaintiffs' NJCRA claim.

Department, the Complaint cannot sustain any cause of action against this defendant; the Police Department is dismissed as a defendant.

### 2. *Mayor Kanitra; Borough Attorney Riordan; and Councilmembers Byrnes, Testa, and Vitale*

Next, to the extent that Plaintiffs seek damages against Mayor Kanitra; Borough Attorney Riordan; and Councilmembers Byrnes, Testa, and Vitale in Counts I through VI based on their role in drafting, voting, and adopting Ordinance No. 2020-12, these claims are barred by the doctrine of absolute legislative immunity. "Members of local legislative bodies, [...] are entitled to absolute legislative immunity for actions taken in a purely legislative capacity." *County Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 172 (3d Cir. 2006) (citing *Acierno v. Cloutier*, 40 F.3d 597, 610 & 610 n. 10 (3d Cir. 1994) (en banc)). The Third Circuit has set out a two-part test to determine whether an action is "legislative" for purposes of determining immunity: "(1) the action must be 'substantively' legislative, which requires that it involve a policy-making or line-drawing decision; and (2) the action must be 'procedurally' legislative, which requires that it be undertaken through established legislative procedures." *Acierno*, 40 F.3d at 610 (citation omitted).

In the present case, both prongs are met. First, Plaintiffs allege in cursory fashion that Defendants "conspired to violate" Plaintiffs' rights by enacting the Ordinance. Specifically, the Complaint alleges only that Councilmembers Byrnes, Testa, and Vitale voted in favor of the Ordinance and Mayor Kanitra voted to break the tie and pass Ordinance 2020-12 on the first and second reading. Thus, the Complaint establishes active participation by Councilmembers Byrnes, Testa, and Vitale and Mayor Kanitra in the legislative process and, this conduct falls squarely within the legislative immunity privilege.[5] *See Aitchison v. Raffiani*, 708 F.2d 96, 99 (3d Cir.

---

[5]     With respect to Borough Attorney Riordan, the Complaint contains no allegations identifying his role in the enactment of the Ordinance. The Complaint alleges merely that Riordan

1983) ("[M]embers of a municipal council acting in a legislative capacity are immune from damage suits under section 1983" and "are immune from suit under section 1985(3) as well."); *see also Ragan v. Fuentes*, No. 05-2825, 2007 WL 2892948, at *8 (D.N.J. Sept. 28, 2007) (finding a mayor's introduction and signing of an ordinance that eliminated the position of chief of police were substantively and procedurally legislative entitling him to legislative immunity).  With regard to the second prong, an ordinance is "procedurally legislative if it was undertaken through established legislative procedures." *Acierno*, 40 F.3d at 613.  Here, it appears that such procedures were followed, and Plaintiffs do not contend otherwise.  As such, Plaintiffs' claims against Mayor Kanitra; Borough Attorney Riordan; and Councilmembers Byrnes, Testa, and Vitale are dismissed with prejudice.

### 3.  The Borough and the Governing Body

That leaves only Plaintiffs' claims against the Borough and the Governing Body.  I will first discuss Plaintiffs' claims in Counts I and II pursuant to Section 1983 and the NJCRA, before addressing Plaintiffs' remaining assortment of state law claims.

The Court construes Count I of Plaintiffs' Verified Complaint to allege violations of their Fourth and Fourteenth Amendment rights under the U.S. Constitution.  Section 1983 provides in relevant part:

---

acted "under color of state law in accordance with and in furtherance of an ordinance, regulation, custom, or usage" and "acted as part of an ongoing knowing, intentional and conscious conspiracy to violate Plaintiffs' rights and by design and plan to intentionally abuse power to harm Plaintiffs." (Compl., at ¶ 11) (internal quotations omitted).  Indeed, the Complaint does not contain any other paragraphs referencing Riordan.  This is simply not enough to sustain any cause of action against Borough Attorney Riordan.  That said, even if Plaintiffs alleged that Riordan was liable based on his purported advice to the Council related to the Ordinance, Riordan, as Borough attorney, would be entitled to legislative immunity.  *See Aitchison v. Raffiani*, 708 F.2d 96, 99 (3d Cir. 1983) (granting a borough attorney legislative immunity where he acted as a legal aide in the course of legislative drafting).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under Section 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, the Complaint generally sets forth the protections provided by the Fourth and Fourteenth Amendments.  Namely, Plaintiffs allege that the Fourth Amendment "operates to specifically prohibit the State or State Actor Government Officials from entering onto private property without a Warrant issued by a Judge upon a finding of 'probable cause' that something illegal has occurred," and prohibits "the State or State Actor Government Officials from entering onto private property without permission or a warrant and from conducting arbitrary government warrantless searches of people."  (Compl., at ¶¶ 23-24.)  As for the Fourteenth Amendment, the Complaint parrots the text of the Constitution, stating that it "operates to specifically prohibit the State or State Actor Government Official[s] from taking any action, regulatory or otherwise, which deprives any person or a 'liberty interest' or a 'property interest' without due process of law."  (*Id.* at ¶ 25.)  Despite this summary of protections afford under the Constitution, however, the Court is troubled that Plaintiffs only loosely connect the Borough's and the Governing Body's conduct related to the passage and enactment of the Ordinance with purported violations of these constitutional rights.   Lacking in factual allegations, other than the process and procedure

surrounding the Ordinance's passage and adoption,[6] the Complaint blanketly alleges that the

Ordinance violates Plaintiffs' Fourth and Fourteenth Amendment rights because

> Defendants have now suddenly changed the definition of 'beach' to
> include ALL beaches, including private property beaches, and with
> literally no legal authority to do so, have illegally extended
> municipal regulatory jurisdiction to now over all private property
> beaches and declared that it is illegal for adults over the age of 21
> years to bring, possess and consume alcohol onto Jenkinson's
> private property beach and it is all but illegal to make any noise or
> play any music on Jenkinson's private property beach.

(*Id.* at ¶ 16.)  Putting aside any concerns regarding the adequacy of the pleading, the Court finds

that Section 1983 is not the appropriate vehicle to challenge the constitutionality of the Ordinance,

because Plaintiffs cannot meet the standing requirements based on the factual allegations contained

in the Complaint.

"Article III of the Constitution limits the federal judicial power to 'Cases' or

'Controversies,' thereby entailing as an 'irreducible minimum' that there be (1) an injury in fact,

(2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that

the injury will be redressed by a favorable decision."  *United Food and Commercial Workers

Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551 (1996); *see also*, *e.g.*, *Bennett v. Spear*,

520 U.S. 154, 162 (1997); *Northeastern Fla. Chapter Associated Gen. Contractors of Am. v.

Jacksonville*, 508 U.S. 656 (1993).  These "requirements ensure that plaintiffs have a 'personal

stake' or 'interest' in the outcome of the proceedings, 'sufficient to warrant ... [their] invocation

of federal-court jurisdiction and to justify exercise of the court's remedial powers on ... [their]

---

[6]     Notably, based on the allegations in the Complaint, Plaintiffs do not appear to take issue
with the process and procedure of the Ordinance's adoption by the Governing Body.  Rather, their
basis for the lawsuit appears to reside in the substantive constitutionality of the Ordinance and the
statute's prohibition of certain conduct on Plaintiffs' private property.

behalf.'" *Joint Stock Soc'y*, 266 F.3d at 175 (quoting *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537–38 (3d Cir. 1994)).

The first element, injury-in-fact, "is often determinative." *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009).   The plaintiff must demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).   To be concrete, an injury need not be "tangible," but "it must actually exist." *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1548-49 (2016).   "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1).   Generalized grievances will not suffice.   *See Schuchardt v. President of the U.S.*, 839 F.3d 336, 344-45 (3d Cir. 2016) (distinguishing between generalized and widely shared grievances).   Furthermore, "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) (quoting *Lujan*, 504 U.S. at 564 n.2).   If the injury is sufficient under those standards, it must also be "fairly traceable to the challenged action[ ] and redressable by a favorable ruling" in accordance with the remaining two elements of standing. *Id.* (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

Here, Plaintiffs' threadbare Complaint falls short of establishing Article III standing to pursue this Section 1983 constitutional claims.   The Complaint merely alleges that Defendants enacted an ordinance that is unconstitutionally overbroad in its attempt to regulate both public and private beaches.   Specifically, Plaintiffs allege that the Ordinance, which, purportedly prohibits certain activities and conduct on private beaches in the Borough, including bringing, possessing,

or consuming alcohol; making loud noise or playing loud music; or bringing larger coolers, violates Plaintiffs' Fourth and Fourteenth Amendment rights.  While Anthony and Frank Storino allege that they own Jenkinson's Pavilion, a business entity that owns Jenkinson's Aquarium, Jenkinson's Pavilion Bar and Restaurant complex, and a portion of the beach and beachfront in the Borough, that fact, alone, is insufficient to establish standing.  Indeed, simply owning property protected by the Fourth Amendment describes a generalized grievance common to many residents of the Borough—a beachfront community.  *See Lujan*, 504 U.S. at 575-76; *see also Clapper*, 133 S.Ct. at 1147 (finding that simply owning property subject to a hypothetical search is "too speculative for Article III purposes").  Rather, Plaintiffs do not allege that any unlawful search or seizure has occurred on their property under the auspices of the Ordinance, nor do they allege that they have somehow incurred costs or suffered any particularized damages as a result of the Ordinance.  *See Coastal Outdoor Advert. Grp., LLC v. Twp. of Union, N.J.*, 676 F. Supp. 2d 337, 347 (D.N.J. 2009), *aff'd sub nom. Coastal Outdoor Advert. Grp., L.L.C. v. Twp. of Union, N.J.*, 402 F. App'x 690 (3d Cir. 2010) (finding injury-in-fact where Plaintiff alleged substantial financial damage).  In fact, as discussed *infra*, the Complaint lacks any allegations related to enforcement of the Ordinance whatsoever.  Accordingly, I conclude that Plaintiffs have failed to demonstrate a redressable injury-in-fact, and therefore, lack standing to assert claims under Section 1983 and the NJCRA against the Borough and the Governing Body.

Rather, I find the more appropriate vehicle to challenge the breadth and constitutionality of the Ordinance—which appears to be Plaintiffs' intention based on the allegations provided in the Complaint—would be a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201.  Indeed, a plaintiff seeking a declaratory judgment must possess constitutional standing but need not have suffered "the full harm expected." *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 194 (3d Cir. 2004)

(quoting *The St. Thomas–St. John Hotel & Tourism Ass'n v. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000)).  In such a case, courts have found that a plaintiff has Article III standing if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*  Although the Court will refrain from making a finding on standing in the context of a declaratory judgment at this time, because Plaintiffs have not asserted a cause of action under 28 U.S.C. § 2201, the Court grants Plaintiffs leave to amend their Complaint in accordance with the guidance provided in this Opinion within fourteen (14) days.

Specifically, Plaintiffs may assert a claim for Declaratory Judgment, pursuant to 28 U.S.C. § 2201, challenging the constitutionality and overbreadth of the Ordinance.  Simultaneously therewith, Plaintiffs may also renew their motion for preliminary injunction and provide adequate briefing on the overbreadth doctrine.  The overbreadth doctrine is an exception to the general rules of standing, and provides "[a]n overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129 (1992).

Finally, the Court turns to Plaintiffs' remaining claims, including "ultra vires," "statutory pre-emption by exclusion," "common law ('judicial') pre-emption," and "arbitrary, capricious and unreasonable."  Because these causes of action either fail to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), or simply do not constitute standalone, recognized causes of action pursuant to any state statutes or common law, these claims are also dismissed.

In Count III, Plaintiffs claim that the Ordinance is "illegal and invalid and unauthorized as *ultra vires* as not falling within the express specific enumerated grants of authority in N.J.S.A. 40:48-1 and N.J.S.A. 40:48-1.2 or elsewhere and beyond the police powers conferred in N.J.S.A.

40:48-2 or elsewhere and fall outside of any implied delegation of authority." (Compl., at ¶ 42.) While this is a generally recognized cause of action, Plaintiffs' allegations are conclusory and bereft of facts sufficient to sustain a plausible claim for relief.  Plaintiffs allege simply that the Borough and the Governing Body's adoption of the Ordinance is "clearly something that is beyond the Defendants' lawful authority to regulate and prohibit." (*Id.* at ¶ 16.) *See In re Nickelodeon Consumer Privacy Litig.*, No.12-7829, 2014 WL 3012873, at *19 (D.N.J. July 2, 2014) (finding that because an allegation is "entirely conclusory," it is "properly disregarded on a motion to dismiss for failure to state a claim.").  Plaintiffs further allege that the Borough and the Governing Body "have no authority to regulate Jenkinson's private property beach, yet they seek to do so and have even done things so [sic] with petty and illegal micro managing [sic] of Jenkinson's private property beach…"  Because the Court is unable to discern the meaning of this convoluted and ambiguous allegation, it is insufficient to form a basis for this cause of action.  Thus, because Plaintiffs' conclusory allegations do not adequately explain the Borough and the Governing Body's purported *ultra vires* conduct, Count III is dismissed without prejudice.

Next, in Counts IV and V, Plaintiffs assert claims for "statutory 'pre-emption' by exclusion" in violation of N.J.S.A. 2C:1-5(d), and "common law ('judicial') pre-emption."  With respect to "statutory 'pre-emption' by exclusion," N.J.S.A. 2C:1-5(d) prohibits enactment or enforcement of any local ordinance "conflicting with any ... policy of this State ... whether that policy be expressed by inclusion of a provision in the code <u>or by exclusion of that subject from the code</u>." *State v. Crawley*, 90 N.J. 241, 244 (1982).  With this provision, the Legislature meant to alert the judiciary to "the need to protect ... negative unexpressed state policies." *Id.* (citing Final Report of N.J. Law Revision Commission, Vol. II: Commentary, pp. 12–13).  Application of the "preemption by exclusion" component of N.J.S.A. 2C:1–5(d) "presents the judiciary with a

difficult task." *Id.* It requires the court to determine "the Legislature's will without reference to a specific statutory text." *Id.* Therefore, "Courts must infer legislative intent from the overall structure of the Penal Code and its legislative history." *Id.*

Like preemption by exclusion, judicial preemption, which Plaintiffs assert in Count V, allows a court to "declare an ordinance invalid if it ... is preempted by superior legal authority." *Rumson Estates, Inc. v. Mayor of Fair Haven*, 177 N.J. 338, 351 (2003) (citing *United Bldg. & Constr. Trades Council v. Mayor of Camden*, 88 N.J. 317, 343 (1982)). "Preemption is a judicially created principle based on the proposition that a municipality, which is an agent of the State, cannot act contrary to the State." *Overlook*, 71 N.J. at 461 (citing *Summer v. Twp. of Teaneck*, 53 N.J. 548, 554 (1969)). In a preemption analysis, the initial question is "whether the field or subject matter in which the ordinance operates, including its effects, is the same as that in which the State has acted." *Id.* If the "field or subject matter" of the municipal ordinance and state law are not the same, there is no preemption; if they are the same, then the question of preemption is further explored. *Id.* "The ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said with confidence that the Legislature intended to immobilize the municipalities from dealing with local aspects otherwise within their power to act." *Summer*, 53 N.J. at 555. "It is not enough that the Legislature has legislated upon the subject...." *Id.* at 554 (citation omitted).

Here, based upon Plaintiffs' briefing, the Court presumes that Plaintiffs' preemption claims relate to the Ordinance's regulation of alcohol consumption and possession on <u>private</u> beaches in the Borough; however, the Complaint lacks specific allegations to that affect. Rather, Plaintiffs only allege in conclusory fashion that "the challenged portions of the New Ordinance" are "illegal as being a violation of N.J.S.A. 2C:1-5(d) and the statutory doctrine of 'Pre-Emption by

Exclusion,'" and are further "invalid as they violate the general doctrine of Pre-Emption ('Judicial Pre-Emption') announced in *Overlook Terrace Management Corporation v. Rent Control Board of West New York*, 71 N.J. 451 (1976)." (Compl., at ¶¶ 45-49.) Indeed, the Complaint contains no allegations related to the Legislature's intentions and the State's regulation of alcohol consumption and possession on private property, nor does it contain any allegations that the Legislature "intended to immobilize" municipalities, like the Borough, from regulating such conduct. Accordingly, Counts IV and V are dismissed without prejudice.[7]

Lastly, in Count VI, Plaintiffs claim that the Ordinance is arbitrary, capricious, and unreasonable. While the Court is skeptical that this claim, which cites no rule or statute, constitutes an independent cause of action rather than a standard of review, this claim is nonetheless dismissed for failure to state a claim. *See Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, 2012 WL 762498, at *10 (D.N.J. 2012) ("Plaintiff's 'arbitrary and capricious' claim must be dismissed as this is a legal standard, not an independent cause of action."). Here, absent a single allegation that the Ordinance "arbitrarily reduced the size of permitted cooler on 'beaches' (formerly just

---

[7]     Plaintiffs also filed supplemental briefing and a declaration of counsel in further support of their motion for preliminary injunction on April 5, 2021. Despite not having permission from the Court to file the supplemental submission, the Court nonetheless has reviewed these additional items for purposes of completeness. Plaintiffs claim in the supplemental briefing that New Jersey's recent legislation legalizing marijuana use impacts their application for injunctive relief because the legislation, in part, provides that persons "under the legal age to purchase alcoholic beverages, [...] who knowingly possesses without legal authority or knowingly consumes any alcoholic beverage [...] in any school, public conveyance, public place, or place of public assembly, or motor vehicle" shall be subject to certain consequences. According to Plaintiffs, this demonstrates that New Jersey has "pre-empted entirely the regulation of alcohol consumption in public places," and that "the State of New Jersey has specifically chosen to exclude enforcement or regulation of alcohol consumption on private property." Thus, according to Plaintiffs, this "further confirms that [D]efendants['] attempt to regulate alcohol use[sic] consumption on private property is beyond the authority conferred upon them and is therefore ultra vires and pre-empted." These additional arguments, however, do not confer standing under Section 1983, nor salvage the deficiencies related to Counts III through VI of the Complaint discussed herein, and therefore, do not alter the Court's decision on this motion to dismiss.

municipal beaches) from a maximum of 24 inches in width and height and maximum of 36 quarts (9 gallon cooler) […] to now a maximum of 13 inches in width, height and length and a maximum of 9 quarts (2.25 gallon cooler)," Plaintiffs provide no basis for their claim that the Ordinance is arbitrary, capricious, and unreasonable.  (Compl., at ¶ 16.)  Indeed, Plaintiffs only allege in conclusory fashion that "[t]he challenged portions of the New Ordinance are arbitrary, capricious and unreasonable and are therefore invalid for such reasons."  (Id. at ¶¶ 51-52.)  Accordingly, because Plaintiffs fail to provide the Court a basis to sustain this cause of action, Count VI is dismissed without prejudice.

### C.    Motion for Preliminary Injunction

Based on the dismissal of all claims asserted in the Complaint, Plaintiffs cannot demonstrate a likelihood of success on the merits, and therefore, Plaintiffs' motion for preliminary injunction is denied.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs' motion for remand is **DENIED** and Defendants' motion to dismiss is **GRANTED**.  The Court dismisses Plaintiffs' federal claims arising under Section 1983 (Count I) and its analog state law claim under the NJCRA (Count II), because, as alleged, Plaintiffs lack Article III standing to pursue those claims.  The Court also dismisses Plaintiffs' additional claims (Counts III through VI), for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  As a result, Plaintiffs' motion for preliminary injunction is **DENIED**, based on an inability to demonstrate a likelihood of success on the merits.

Plaintiffs are given leave to file an amended complaint against the Borough and the Governing Body within fourteen (14) days from the date of this Opinion and accompanying Order, in accordance with the dictates of this Opinion, and they may file a renewed motion for preliminary

injunction within that same 14-day period, based on their amended complaint.[8]  The Borough and the Governing Body will then be provided twenty-one (21) days from the date Plaintiffs file their renewed motion for preliminary injunction to submit opposition.  Plaintiffs will be provided seven (7) days from the date of the opposition to file a reply.  The time in which Defendants may file an Answer or otherwise move with regard to the amended complaint is stayed until further Order of the Court.


Dated: April 26, 2021                                    /s/ Freda L. Wolfson
                                                         Freda L. Wolfson
                                                         U.S. Chief District Judge

---

[8]     If Plaintiffs choose to forego their federal claims, the Court notes that Plaintiffs may certainly refile their claims arising under state law in State Court.